IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| VINCENT NARDONE,<br>            Plaintiff,<br><br>v.<br><br>NATIONAL STRATEGIC GROUP,<br>LLC & NEW LIFE RECOVERY<br>SOLUTIONS,<br>            Defendants. | Civil Action No. 3:21-cv-731 |
| FOUNDATION MEDICAL LLC,<br>            Plaintiff,<br><br>v.<br><br>NATIONAL STRATEGIC GROUP,<br>LLC & NEW LIFE RECOVERY<br>SOLUTIONS,<br>            Defendants. | Civil Action No. 3:21-cv-732 |

## OPINION

The defendants, National Strategic Group, LLC ("NSG") and New Life Recovery Solutions ("New Life"), move to transfer venue to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a). (Case No. 3:21cv731, ECF No. 7; Case No. 3:21cv732, ECF No. 11.) Because the applicable venue considerations— including deference to the plaintiffs' choice of venue, the convenience of the parties, and the interest of justice—collectively weigh against transferring venue, the Court denies the defendants' motions to transfer venue.

## I. BACKGROUND

Foundation Medical LLC ("Foundation") owns and operates an outpatient addiction treatment clinic in Midlothian, Virginia. (Case No. 3:21cv732, ECF No. 9 ¶ 8.) In January 2019,

Foundation hired NSG—an online marketing services company based in Ohio—to assist in expanding Foundation's patient base in Virginia. (*Id.* ¶¶ 5, 14–18, 21; Case No. 3:21cv732, ECF No. 11, at 3.)   Under the arrangement, NSG created and maintained a website to advertise Foundation's services.[1]   (Case No. 3:21cv732, ECF No. 9 ¶¶ 20–21.)   Foundation took photographs of its Medical Director, Dr. Vincent Nardone, for marketing purposes for the website.[2] (*Id.* ¶¶ 23, 45.)   Foundation sent these photographs to NSG, which posted them on the website. (*Id.* ¶ 26.)

In April 2020, Foundation terminated its agreement with NSG for two reasons.   First, NSG both failed to deliver the patient growth it promised under the contract, and, second, NSG actively offered its marketing services to Foundation's competitors in the Richmond area. (*Id.* ¶¶ 36–37, 40.)   Notwithstanding the termination of the contract, NSG continues to maintain and operate the website as is from its Ohio office.[3] (*Id.*; Case No. 3:21cv732, ECF No. 11, at 3–4.)   It continues to display Dr. Nardone's photograph even though he no longer consents to its use. (Case No. 3:21cv732, ECF No. 9 ¶¶ 45, 48.)   Further, the defendants now use the website to direct prospective clients to Foundation's competitors in Virginia, including New Life. (*Id.* ¶¶ 46–47, 49, 51.)

Foundation and Dr. Nardone brought separate lawsuits against the defendants in Chesterfield County Circuit Court, seeking an injunction, damages, and a transfer of the website's ownership to Foundation. (Case No. 3:21cv731, ECF No. 1-3, at 1, 5; Case No. 3:21-cv-732, ECF No. 1-3, at 1, 12.)   The defendants removed the cases to this Court because of diversity of

---

[1] The website's uniform resource locator ("URL") is www.richmondsuboxonedoctor.com. (Case No. 3:21cv732, ECF No. 9 ¶ 20.)

[2] Foundation owns all copyrights of the photograph. (*Id.* ¶ 25.)

[3] Although the Court recognizes that the website no longer appears active on the Internet, the Court discusses the facts as alleged in the complaint. (*See id.* ¶¶ 41–51.)

2

citizenship.[4] (Case No. 3:21cv731, ECF No. 1, at 1; Case No. 3:21cv732, ECF No. 1, at 1.) The defendants then moved to transfer venue pursuant to 28 U.S.C. § 1404(a). (Case No. 3:21cv731, ECF No. 7; Case No. 3:21cv732, ECF No. 11.)

## II. ANALYSIS

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district . . . where it may be brought." This includes any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[5] *Id.* § 1391(b)(2). When deciding whether to transfer venue, courts must consider "(1) the weight accorded to [the] plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). "The party seeking transfer bears the burden of proving that the circumstances of the case are *strongly* in favor of transfer." *Phillips v. Uber Techs., Inc.*, No. 3:15cv544, 2016 WL 165024, at *1 (E.D. Va. Jan. 13, 2016) (quoting *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (emphasis in original)).

The defendants fail to meet this high burden. Most of the applicable venue considerations—including deference to plaintiffs' chosen forum, convenience of the parties, and the interest of justice—favor keeping the cases in this District.

---

[4] Both Foundation and Dr. Nardone reside in Virginia. (Case No. 3:21cv731, ECF No. 1 ¶ 3; Case No. 3:21cv732, ECF No. 9 ¶ 4.) In contrast, NSG and New Life qualify as Ohio and Kansas citizens, respectively. (Case No. 3:21cv732, ECF No. 1 ¶¶ 6–7.)

[5] For purposes of this Opinion, the Court assumes that the Northern District of Ohio has personal jurisdiction over both defendants. *See Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2005) ("[M]ovant[s] must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district.").

### A. Plaintiffs' Choice of Venue

As the plaintiffs' chosen venue, this District deserves substantial deference for venue purposes. "[A] plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)). But if "a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight." *Telepharmacy Sols., Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 (E.D. Va. 2003) (quoting *Cognitronics Imaging Sys., Inc. v. Recognition Rsch. Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000)).

First, this District constitutes the plaintiffs' home forum because both plaintiffs reside here.[6] Second, the cause of action substantially relates to this District. Although NSG created and managed the website out of its office in Ohio, Foundation contracted with NSG for the sole purpose of advertising to Virginia residents, particularly in the Richmond area. (Case No. 3:21cv732, ECF No. 9 ¶¶ 18–19, 21; ECF No. 11, at 3–4.) Notably, the website displayed Foundation's office address in Midlothian, Virginia, and the website's URL even contains the word "[R]ichmond." (Case No. 3:21cv732, ECF No. 9 ¶¶ 4, 20, 30.) Furthermore, the plaintiffs contend that they directly suffered lost revenue and reputational harm in Virginia as a result of the defendants'

---

[6] Dr. Nardone resides in Virginia. (Case No. 3:21cv731, ECF No. 1 ¶ 3.) And Foundation's principle place of business is Midlothian, Virginia. (Case No. 3:21cv732, ECF No. 9 ¶ 4); *see* 28 U.S.C. § 1391(c) (explaining that a corporation "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"); *Daimler AG v. Bauman*, 571 U.S. 117 (2014) ("[T]he . . . principal place of business [is a] "paradig[m] . . . bas[is] for general jurisdiction." (third alteration and second omission in original) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

actions.  (Case No. 3:21cv731, ECF No. 12, at 6.)   Thus, as the plaintiffs' chosen venue, this
District deserves substantial deference.

### B.  Witness Convenience and Access

Witness convenience does not significantly favor either party.  When considering witness
convenience, this Court "draws a distinction between party-witnesses and non-party witnesses and
affords greater weight to the convenience of non-party witnesses." *Phillips*, 2016 WL 165024, at
*2 (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005)).  "The
party asserting witness inconvenience must proffer sufficient details regarding the witness and his
or her testimony to allow the court to assess both the materiality of the evidence that the witness
will offer and the inconvenience that will result from declining to transfer the action." *Lycos, Inc.
v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007).  This typically requires the movant to
submit affidavits providing the identities and descriptions of the expected testimony of its
witnesses. *See Bd. of Trs. v. Baylor Heating & Air Conditioning*, 702 F. Supp. 1253, 1258 (E.D.
Va. 1988).  Courts afford less weight to this factor when a party does not require the use of
compulsory process to secure witness appearances. *Lycos, Inc.*, 499 F. Supp. 2d at 693.  But courts
give greater weight to this factor if the inconvenience applies to "witnesses 'whose testimony is
central to a claim and whose credibility is also likely to be an important issue.'" *Id.* (quoting
*Baylor Heating & Air Conditioning*, 702 F. Supp. at 1258).

The defendants' four party witnesses all reside in Ohio and can offer relevant information
about the services NSG provided to Foundation.  (*See* Case No. 3:21cv732, ECF No. 11, at 4).  Of
those four, one refuses to travel to Richmond for the proceedings, while another would find

traveling highly burdensome.[7] (Case No. 3:21cv732, ECF No. 22-3 ¶¶ 4–5; ECF No. 22-4 ¶ 6.) The plaintiffs' three party witnesses would apparently offer testimony about Foundation's business; the plaintiffs do not explain, however, where these party witnesses live. Dr. Nardone, who lives in Virginia, has a medical practice that transfer of this case would disrupt. (Case No. 3:21cv731, ECF No. 12, at 8.)

The defendants intend to call five nonparty witnesses, all of whom are former NSG employees who live in Ohio and were involved in the work that NSG provided to the plaintiffs. (Case No. 3:21cv732, ECF No. 11, at 4–5.) Because NSG no longer employs these witnesses, NSG anticipates that it will need to subpoena them in order to compel their appearances. (Case No. 3:21cv732, ECF No. 22-2 ¶ 8.) In comparison, the plaintiffs intend to call one or two witnesses not affiliated with Foundation; the plaintiffs do not explain where these witnesses live or what testimony they will offer.

While more witnesses live and work in or near Euclid, the ease of modern travel makes coming to Richmond for a trial easier. Further, the parties can depose the witnesses in Ohio, and the witnesses can testify by video recording. Whichever venue holds the trial, someone has to travel in order to appear personally. Given that NSG chose to contract with a Richmond company to improve its Richmond client base, and given the parties' ability to present testimony in Richmond—either in person or by video—the convenience to witnesses does not weigh significantly in favor of either party.

---

[7] The defendants do not provide information about the willingness of the other two party witnesses to travel to Virginia for these proceedings.

### C. Convenience of the Parties

The convenience of the parties, however, does not support a venue transfer. "[W]hen plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer" because transferring venue would merely "shift the balance of inconvenience" from one party to another. *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007) (quoting *Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. at 1259). Because this District constitutes the plaintiffs' home forum,[8] transferring venue to the Northern District of Ohio would merely shift the inconvenience of the instant actions from the defendants to the plaintiffs. Thus, party convenience does not support transferring venue away from this District.

### D. Interest of Justice

Finally, the interest of justice weighs against transferring venue to the Northern District of Ohio. In assessing this factor, courts should consider:

> (1) the pendency of a related action, (2) the court's familiarity with the applicable law, (3) docket conditions, (4) access to premises that might have to be viewed, (5) the possibility of an unfair trial, (6) the ability to join other parties, (7) the possibility of harassment, and (8) the interest of having local controversies decided at home.

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 872 (E.D. Va. 2013). When weighing these factors, courts should especially consider the interests of "judicial economy and the avoidance of inconsistent judgments." *Id.* (quoting *Byerson v. Equifax Info. Servs.*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)).

Four of the above considerations do not apply here. The defendants do not contend that that maintaining venue in this District would lead to the possibility of an unfair trial, an inability

---

[8] *See supra* note 6.

7

to join other parties, or the possibility of harassment. Moreover, no party argues that it needs access to premises in either this District or the Northern District of Ohio.

Similarly, related actions certainly exist because both plaintiffs' suits arise from the defendants' continued operation of the website that displays Dr. Nardone's photograph. (Case No. 3:21cv731, ECF No. 1-3; Case No. 3:21cv732, ECF No. 9.) Thus, in the interest of judicial economy, the Court should either keep both suits in this District or transfer both to the Northern District of Ohio. But the relation of these suits otherwise does not aid the Court in deciding which venue is more appropriate.

The interest of justice factor, therefore, turns on three primary considerations: (1) the court's familiarity with the applicable law, (2) docket conditions, and (3) the interest in having local controversies decided at home. All three considerations weigh against transferring venue.

### 1. Familiarity with Applicable Law

First, the familiarity with applicable law weighs in favor of keeping the actions in this District. "[A] federal court sitting in diversity applies the choice-of-law rules of the forum state." *Olawole v. ActioNet, Inc.*, 258 F. Supp. 3d 694, 703 (E.D. Va. 2017); *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Here, Virginia's choice-of-law rules apply.

The following sections analyze each of the plaintiffs' claims within this context.

#### a. Federal Copyright Infringement (17 U.S.C § 106)

Federal law applies to Foundation's copyright infringement claim against NSG. *See* 17 U.S.C. § 106. Because this District and the Northern District of Ohio are equally equipped to handle claims under federal law, this count does not affect the outcome of this analysis.

8

b. Breach of Contract

Ohio law applies to Foundation's breach of contract claim against NSG.  "Virginia contract choice of law rules distinguish between actions concerning the performance of a contract, which are governed by the law of the place of performance, and actions concerning the validity or creation of a contract, which are governed by the law of the place of the making of the contract."  *United Gov't Sec. Off. of Am. v. Spcial Operations Grp., Inc.*, 436 F. Supp. 2d 790, 792 (E.D. Va. 2006). Here, because the parties dispute the performance of the contract, "the law of the place of performance" governs.  *Id.*   Although Foundation made payments to NSG from Virginia, and although under the contract NSG sought to direct patients in Virginia to Foundation, NSG performed its obligations under the contract in Ohio.  Thus, Ohio law applies to Foundation's breach of contract claim.

c. Tort Claims

"Virginia applies the *lex loci delicti*, the law of the place of the wrong, to tort actions . . . ."  *Milton v. ITT Rsch. Inst.*, 138 F.3d 519, 521 (4th Cir. 1998).  Under this doctrine, courts must apply "the law of the state in which the wrongful act took place, wherever the effects of that act are felt."  *Id.* at 522.  "[I]f state law is unclear[,] federal courts must predict the decision of the state's highest court."  *Wells v. Liddly*, 186 F.3d 505, 527–28 (4th Cir. 1999).  "[A] proper application of *lex loci* requires a tort-by-tort analysis of when a tort is alleged to have been completed to determine the place of the wrong."  *Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 667 (E.D. Va. 2019) (discussing Virginia law); *see McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662, 663 (1979) (affirming *lex loci delicti* as the settled rule in Virginia). "The place of the wrong for purposes of the *lex loci delicti* rule is defined as the place where the last event necessary to make an actor liable for an alleged tort takes place, even if the actor has no

9

control over the location of the last event." *Insteel Indus. v. Costanza Contracting Co.*, 276 F. Supp. 2d 479, 486 (E.D. Va. 2003) (discussing Virginia law). Accordingly, the place of the wrong corresponds with the moment when the plaintiff's cause of action begins to accrue. *Cockrum*, 365 F. Supp. 3d at 667; *see Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986).

### i. Untrue, Deceptive, and False Advertising<br>(Va. Code Ann. §§ 18.2-216, 59.1-68.3)

Virginia law governs Foundation's untrue, deceptive, and false advertising claim. In Virginia, a right of action for false advertising claims begins only once a plaintiff has suffered a loss. *See Klaiber v. Freemason Assocs., Inc.*, 266 Va. 478, 487, 587 S.E.2d 555, 559 (2003); Va. Code Ann. §§ 18.2-216, 59.1-68.3 (West 2022). Here, Foundation suffered harm not when NSG published the website, but only once the website directed prospective clients in Virginia to Foundation's competitors. (Case No. 3:21cv732, ECF No. 12, at 10–11.) Because NSG allegedly injured Foundation in Virginia, Virginia law applies to the false advertising claim.

### ii. Conspiracy to Injure Another in Trade, Business, or Profession<br>(Va. Code §§ 18.2-499–500)

Virginia law also applies to Foundation's claim of conspiracy to injure another in trade, business, or profession. To prove such a claim, "a plaintiff must establish: '(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff.'" *Dunlap v. Cottman Transmission Sys.*, 287 Va. 207, 214–15, 754 S.E.2d 313, 317 (2014) (quoting *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E. 2d 592, 596 (1984)). "No cause of action exists without the resulting injury . . . ." *Id.* at 316–17 (quoting *Gallop v. Sharp*, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942)). As noted, Foundation

suffered its injury in Virginia.[9]   Consequently, Virginia law also applies to Foundation's conspiracy to injure another in trade, business, or profession claim.

### iii.   *Common Law Conspiracy*

Virginia law governs Foundation's common law conspiracy claim against the defendants. To establish a common law conspiracy, the plaintiff must show that "two or more persons combined to accomplish . . . some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means.  The foundation of a civil action of conspiracy is *the damage caused by the acts committed in furtherance of the conspiracy.*"  *Com. Bus. Sys. v. Bellsouth Servs.*, 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995) (emphasis added) (internal citations omitted).  This rule implies that suffering harm constitutes the "last event" in a common law conspiracy.  *Insteel Indus.*, 276 F. Supp. 2d at 486; *see Com. Bus. Sys.*, 453 S.E.2d at 267.  Because Foundation suffered harm in Virginia,[10] Virginia law applies to its common law conspiracy claim.

### iv.   *Tortious Interference with Prospective Business or Economic Advantage*

Virginia law applies to Foundation's tortious interference claim against the defendants.

> To establish a claim for tortious interference with a business or contract expectancy, [the plaintiff must] show that (1) it had a [business] expectancy; (2) [the defendant] knew of the expectancy; (3) [the defendant] intentionally interfered with the expectancy; (4) [the defendant] used improper means or methods to interfere with the expectancy; and (5) [the plaintiff] suffered a loss as a result of [the defendant's] disruption of the [business] expectancy.

*Preferred Sys. Sols. v. GP Consulting, LLC*, 284 Va. 382, 403, 732 S.E.2d 676, 688 (2012). Because the right of action does not accrue until the plaintiff suffers a loss, the location of that loss—in this case, Virginia[11]—again determines the applicable law.  *See Cockrum*, 365 F. Supp.

---

[9] *See supra* Section II.D.1.c.i.
[10] *See supra* Section II.D.1.c.i.

[11] *See* Section II.D.1.c.i.

3d at 667.  Consequently, Virginia law governs Foundation's tortious interference claim.

### v. *Common Law Unfair Competition*

Ohio law governs Foundation's common law unfair competition claim against the defendants.  Virginia narrowly defines unfair competition as "deception, by means of which goods of one dealer are palmed off as those of another." *Monoflo Int'l, Inc. v. Sahm*, 726 F. Supp. 121, 127 (E.D. Va. 1989) (quoting *Benjamin T. Crump Co. v. J.L. Lindsay, Inc.*, 103 Va. 144, 160, 107 S.E. 679, 684 (1921)).  Under this standard, the right of action appears to accrue at the moment such deception occurs.  *See id.*  Here, the alleged deception occurred when NSG failed to remove from the website "all specific Foundation Medical practice information upon termination of the parties' relationship." (Case No. 3:21cv732, ECF No. 9 ¶ 100.)  Because NSG failed to do so from its Ohio office, Ohio law governs Foundation's common law unfair competition claim.  (*See* Case No. 3:21cv732, ECF No. 11, at 3–4.)

### vi. *Unauthorized Use of Picture and Image*

Finally, Ohio law governs Dr. Nardone's unauthorized use of picture and image claim against the defendants.  Virginia law prohibits the use of another's name or picture without having obtained that person's consent.  Va. Code Ann. § 8.01-40 (West 2015).  In a false advertising context, the Fourth Circuit has recognized a "name is used for advertising purposes *when it appears in a publication.*" *Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 F. App'x 256, 262 (4th Cir. 2016) (emphasis added) (discussing Virginia law).  Applying this standard to pictures, the location of publication—in this case, Ohio—serves as the place of injury. (Case No. 3:21cv732, ECF No. 11, at 3–4.)  Thus, Ohio law governs this claim.

*          *          *

12

In total, Virginia law applies to four of the plaintiffs' claims, Ohio law governs three of the claims, and federal law applies to Foundation's copyright claim. Consequently, this District has slightly more familiarly with the applicable law and, therefore, this consideration weighs against a transfer. *See Coors Brewing Co. v. Oak Beverage, Inc.*, 549 F. Supp. 2d 764, 774 (E.D. Va. 2008) (noting that federal courts in New York have greater familiarity with claims brought under New York state law than do federal courts in Virginia).

### 2. Docket Conditions

Although docket conditions receive minimal weight in venue transfer decisions, this consideration also supports keeping the instant suits in this District. *Koh*, 250 F. Supp. 2d at 639. In civil suits, the Northern District of Ohio maintains a median time from filing to disposition of 9.4 months. United States District Courts—National Judicial Caseload Profile 42 (Dec. 31, 2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf.    In contrast, this District's median time from filing to disposition in civil suits is 6.6 months. *Id.* at 25.  Furthermore, the median time from filing to trial is six months longer in the Northern District of Ohio than in this District. *Id.* at 25, 42.  Thus, this District's docket conditions better support the interests of judicial economy. *See Va. Innovation*, 928 F. Supp. 2d at 867.

### 3. Interest in Deciding Local Controversies at Home

Virginia has a greater interest in these actions than does Ohio. *Id.*  This Court has recognized that Virginia has a substantial interest in the outcome of a case where the injured party resides in Virginia and the state legislature "has enacted legislation seeking to protect Virginia [citizens] from the type of unlawful conduct allegedly at issue." *Verizon Online Servs. v. Ralsky*, 203 F. Supp. 2d 601, 624 (E.D. Va. 2002).

In *Jaffé v. LSI Corp.*, this Court found that a patent controversy was local to North Carolina—not Virginia—for two key reasons. First, the defendants manufactured and sold the patented product in North Carolina. 874 F. Supp. 2d 499, 505–06 (E.D. Va. 2012). Second, Virginia citizens had no special interest in the outcome of the dispute because the claim only implicated federal, not state, law. *Id.*

Just as the *Jaffé* defendants manufactured the patented product in the North Carolina, the defendants here similarly created and maintained the website in Ohio. But unlike *Jaffé*, where the defendants sold the product in the same forum in which they manufactured it, NSG created the website to market Foundation's services in a forum *outside* of where it created the website—in this case, Virginia. Moreover, Virginia has a distinct interest in this dispute's outcome because both plaintiffs reside here,[12] and Virginia law governs more of the plaintiffs' claims than does Ohio law.[13] *See Verizon Online*, 203 F. Supp. 2d at 624. As a result, Virginia more readily qualifies as the situs of the controversy and has a stronger interest in the instant suits. Thus, this District's (1) better familiarity with the applicable law, (2) more efficient docket conditions, and (3) stronger interest in deciding this local controversy collectively swing the interest of justice factor in favor of maintaining the suits here.

### III. CONCLUSION

For the foregoing reasons, the Court will deny the defendants' motions to transfer venue. (3:21-cv-731, ECF No. 7; 3:21-cv-732, ECF No. 11.) The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

---

[12] *See supra* note 6.

[13] *See supra* Section III.D.1.

14

Date: _22_ March 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

15